The People ex rel. Delafield *v.* Hughitt.

New trial granted.

THE PEOPLE ex rel. TALMADGE DELAFIELD *v.* WILLIAM E HUGHITT, County Judge, &c.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1871.)

In proceedings to bond municipal corporations in aid of railroads (L. 1869, p. 2303) a petition must be presented to the county judge, signed by the requisite number of tax-payers (§ 1) before he is authorized to make an order for notice of a hearing.

Several petitions may be signed, and they may be presented to the judge at different times.

The act (§ 2) requires personal appearance and consent. before the county judge, at the time and place designated for taking proof, by tax-payers who have not signed the petition, as indispensable to their being counted as consenting.

Expression of a desire by some of the petitioners in their petition that the proceeds of the proposed bonds shall be invested in first mortgage bonds of the railroad, does not render the petition insufficient or informal.

It seems, in the absence of any expression of desire on the subject in the petition, the commissioners could be restrained from investing in bonds not reasonably well secured.

An averment in the petition that the subscribers constitute a majority of the tax-payers, and represent a majority of the taxable property on the last assessment roll of the town is indispensable, and without it the petition is fatally defective.

The assessment roll which is to furnish the names of tax-payers and amounts assessed, is the last roll which has been revised and corrected by the supervisors.

Whether a clause in the petition desiring the commissioners to invest the proceeds of the town bonds in the stock or bonds, or both, of the railroad, will not render it invalid. *Quere.·*

It seems the power to name the sum for which bonds may issue must be exercised by the tax-payers, and may not be delegated.

THIS was a writ of *certiorari* to the county judge of Cayuga county, bringing up for review his proceedings upon application of certain tax-payers of the town of Ledyard in that county, for the purpose of bonding that town in aid of the Cayuga Lake Railroad Company.

It appeared from the return to the writ that a petition was presented to the defendant on the 15th of November, 1870, by one Gardner C. Gifford, setting forth as follows, viz.:

" *To the County Judge of Cayuga County:*

" The petition of Gardner C. Gifford, of the town of Ledyard, in said county, respectfully represents and sets forth :

" 1. That a majority of the tax-payers of the said town, which is a municipal corporation within this State, whose names appear upon the last preceding assessment roll of said corporation as owning or representing a majority of the taxable property within the corporate limits of said town, hereby uniting with your petitioner, also one of the said tax-payers, desire to avail themselves of the rights and privileges designed and secured by chapter 907 of the Laws of 1869, for the pur-pose of furthering the construction of the Cayuga Lake rail road.

" 2. That the said petitioners are a majority of the tax-payers of said town, and that they represent upon said assesssment roll such a majority of the taxable property of the said town, as aforesaid.

" 3. Your petitioners desire that the said town of Ledyard shall create and issue its bonds to the amount of one hundred thousand dollars ($100,000), which sum is less than ten per cent of the whole amount of the taxable property, as shown by said roll, and that the same, or the proceeds thereof, may be invested in the stock or bonds of the said railroad company, under and in pursuance of the provisions of the said act, entitled 'An act to amend an act entitled an act to authorize the formation of railroad corporations, and to regulate the same, passed April 2d, 1850,' passed May 18th, 1869.

" Your petitioner further shows that the original petitions

The People ex rel. Delafield *v.* Hughitt.

of the said majority of tax-payers are severally hereto annexed.

" AUBURN, *Nov.* 15, 1870.

"GARDNER C. GIFFORD."

" CAYUGA COUNTY, *ss.* :

" Gardner C. Gifford, of Ledyard, in the said county, being duly affirmed, doth depose and say that he is the above described petitioner, and one of the original petitioners whose names are signed to the annexed petitions therein referred to ; that he has read the foregoing petition, and knows the contents thereof ; that the same is true of his own knowledge, except as to those matters which are therein stated on information and belief; and that, as to those matters, he believes it to be true.

"GARDNER C. GIFFORD.

" Subscribed, etc."

That accompanying the petition were a number of copies of printed petitions, each bearing a number of signatures of certain tax-payers of the town of Ledyard, as follows, viz. :

" To the Honorable W. E. HUGHITT, *County Judge of Cayuga County :*

" The petition of the undersigned residents and others, and whose names appear upon the tax list and assessment roll of the town of Ledyard, in said county, as owning or representing certain taxable property in the corporate limits of said town, respectfully shows :

" That the said petitioners desire that the said town of Ledyard shall create and issue its bonds to the amount of one hundred thousand dollars, and that the same, or the proceeds thereof, shall be invested in the stock or bonds, or both, of ' *The Cayuga Lake Railroad Company,*' in pursuance of an act of the Legislature of the State of New York, entitled ' An act to amend an act to authorize the formation of rail road corporations, and to regulate the same, passed April 2d,

1850,' so as to permit municipal corporations, &c., &c., passed
May 18, 1869 (chap. 907 of Laws of 1869).

" And in furtherance of the objects of said act, we have
hereunto signed our names at the said town of Ledyard."

Here followed the signatures, and opposite each, respec-
tively, the amount of property assessed to the petitioners.

Of 206 signatures subscribed to the several petitions, nine
were subscribed to a petition differing in no way from the
others, except that it requested the investment to be made in
the first mortgage bonds, &c., instead of in stock or bonds, or
both. These nine tax-payers were assessed, in the aggregate,
$15,520.

The county judge, upon presentation of the petitions,
made an order for publication of notice, appointing a time
(December 12th then next) and place at which he would pro-
ceed to take proof, &c. He was afterward, upon the
day and at the place named, attended by the petitioner
Gifford and certain other of the petitioners, where, upon
proofs of service, the signatures of subscribers were proved
to the number of 206, representing $630,183. There were
also produced to the judge then for the first time certain
other petitions substantially like a majority of the former,
duly signed by ten other different tax-payers of the town,
who were assessed upon the tax list, and their signatures and
identity duly proved, and who were assessed for property
valued in the aggregate at $10,750. These ten subscribers
did not personally appear; whereupon, upon objection,
the names were excluded from the number of tax-payers con-
senting to the proceedings. Objections were likewise sus-
tained to the consideration of the application of the nine
tax-payers whose petition expressed a desire for the first
mortgage bonds of the road. The total assessed property
necessary to make up the amount required by the law was
found by the county judge to be $637,760; and exclud-
ing the amounts for which the ten petitioners whose peti-
tions were first presented at the hearing, and the nine whose
petition desired first mortgage bonds, left the aggregate amount

The People ex rel. Delafield *v.* Hughitt.

of property of the petitioners $614,663. The county judge refused to appoint commissioners.

*Cox & Avery,* for the relator.

*H. L. Comstock,* for the defendant.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J. Proceedings that are to impose a charge upon the property of the citizen, not only without his consent, but against his will, should conform strictly to the law that authorizes them. There can be no intendment in favor of such proceedings; they must be able to stand upon the law or they must fall.

Bonding towns in aid of railroad companies is becoming oppressive, and the proceedings are sometimes conducted in a manner little creditable to those who have them in charge; unfair means being resorted to in order to obtain signatures to the consent to the issue of the bonds.

These considerations should have no other influence upon the minds of judges than to induce them to require a strict compliance with the statute before the authority to issue bonds is held to be established.

In this case, the legality of the proceedings to bond the town of Ledyard, in the county of Cayuga, is objected to on several grounds:

1st. That a petition signed by a number of tax-payers consenting to bonding, and whose consents are necessary in order to constitute a majority of the tax-payers of the town, was not presented to the county judge until the day assigned for the hearing before him, and that such consents were not valid and could only be made so by the persons appearing personally before the county judge.

2d. That some of the petitioners necessary to constitute a majority, signed a petition in which consent was given that the moneys to be raised should be invested in the first mortgage bonds of the Cayuga Lake Railroad Company, while the

petitioners of the others consenting, authorized the investment in the stock or bonds, or both, of said company.

3d. The petitions do not state that the subscribers constitute a majority of the tax-payers appearing on the last assessment roll of the town.

4th. The assessment roll of 1869, in reference to which the consents were obtained, was not the last assessment roll of the town, that for 1870 having been completed before said petitions were signed.

1st. As to the first objection:

The first section of chapter 907 of the Laws of 1869, providing for bonding towns in aid of railroad companies, provides that whenever a majority of the tax-payers of any municipal corporation, whose names appear on the last preceding tax list as owning or representing a majority of the taxable property in said corporation, shall make application to the county judge of the county in which such corporation is situated, by petition verified by one of the petitioners, setting forth that they are such majority of tax-payers, and that they desire that such corporation shall issue bonds to an amount, to be named in such petition, and invest the same, or the proceeds thereof, in the stock or bonds (as said petition may direct) of such railroad company in this State as may be named in such petition, it shall be the duty of the county judge to order the publication of a notice, &c., that he will, on a day to be named by him, proceed to take proof of the facts stated in said petition as to the number of tax-payers joining in such petition, and as to the amount of taxable property represented by them.

The second section provides that said county judge shall take proof of the facts stated in said petition; and if it satisfactorily appears that said petitioner, or said petitioners and such other tax-payers of said town as may then and there appear before him, and express a desire to join as petitioners, do represent a majority of the tax-payers of said corporation in number and amount of taxable property, he shall so adjudge, &c.

In order to comply with the first section of this statute a petition or petitions, signed by those representing themselves to be, and who are such majority, as proved by the oath of one of them, must be presented to the county judge; and until that is done, he cannot make an order assigning a day for taking proofs as to the facts stated in the petition.

It is not necessary that the petitioners should all sign one petition, nor that all the petitions should be delivered to the county judge at the same time, or on the same day, but they must all be before him when he makes the order.

If the tax-payers wish to consent but do not sign the petition presented to the judge, they must appear before him at the time and place designated for the taking proof, and then and there express a desire to join in the petition.

The statute contemplates a personal appearance. An appearance in person is indispensable to authorize the county judge to count such tax-payers as consenting to the issue of bonds. It would be a perversion of the language of the statute to hold that signing a petition is an appearance, or that such petition is the expression of a desire to join as petitioners. I am, therefore, of the opinion that the county judge properly rejected the names of those ten tax-payers who signed the petition presented at the hearing, but did not appear before him.

2d. As to the expression by nine of the tax-payers of their desire that the proceeds of the bonds issued by the town should be invested in the first mortgage bonds of the railroad company, I cannot agree with the county judge that the petition containing this language is informal or insufficient. A first mortgage bond is a bond of the company, and there is no evidence or presumption that more than one mortgage will ever be issued.

If it should turn out that all the bonds secured by the first mortgage were disposed of before commissioners of Ledyard obtained the means to purchase bonds for the town, but bonds secured by a second mortgage were for sale, what then would be the situation of the commissioners? If the condition

referred to is valid, they would not buy the bonds, and as a consequence the investment must be abandoned.

This is one view of the question; but let us suppose that the property of the company is only sufficient to secure the first issue of bonds. Would the commissioners be acting in good faith if they purchased those purporting to be secured by a second mortgage? Most certainly not. If there are any bonds secured by a mortgage on the property of the company, they are those secured by the first.

The limitation, therefore, to bonds under a first mortgage is to bonds best secured, and such a direction is not pro·hibited by the statute. If nothing was said on the subject in the petition, the commissioners could be restrained from investing in bonds not reasonably well secured.

3d. As to the necessity of averring in the petition of the tax-payers that they, the subscribers thereto, constitute a majority of tax-payers, and represent a majority of the taxable property on the last assessment roll of the town, I think this allegation is indispensable. It is required by the very terms of the statute, and the court has no power to dispense with it.

There is, however, a sufficient reason why such a statement should be contained in the petition. The averment that the subscribers are the majority of the tax-payers and represent a majority in amount of the taxable property, presents the very issue to be tried by the county judge. "He is to take proofs of said allegations in said petition." This cannot be done if no such allegations are contained in it. The petition is in this respect fatally defective.

4th. That the assessment roll of 1870, and not that of 1869, should have been resorted to, in order to ascertain who were tax-payers and the amount of taxable property in said town.

The legislature intended to make the last completed assessment roll of the town the one to which resort should be had. A tax roll is completed, so far as the assessors are concerned, when it is delivered to the supervisor; but as by the Revised Statutes (1 Statutes at Large, 367, § 31), the supervisors at

their annual meeting may increase the valuation of some of the towns of their county and reduce that of others, it would be impossible before they have acted to ascertain the aggregate property of any particular town. Again, boards of supervisors are authorized to strike from the assessment roll the names of the persons illegally assessed. Until this power is exercised, neither the number of tax-payers nor the amount of taxable property can be ascertained.

It follows that the assessment roll, which is to furnish names and amounts, must be the one that has been reviewed and corrected by the supervisors. In this case the roll of 1869 is the only one that can be assumed to be the proper one.

The question is not discussed by counsel whether the clause in the petition desiring the commissioners to invest the proceeds of the bonds of the town in the stock or bonds, or both, of the railroad company, is valid.

I do not put my decision in this case upon the invalidity of the petition by reason of that clause, as it has not been argued by counsel; but I do not desire that by not alluding to it, I shall be considered as assenting to its validity.

The statute provides that the petitioners shall state in the petition the amount for which they consent the bonds of the town shall be issued, and that the same may be invested in the stock or bonds of such railroad company in this State as shall be named therein.

The petitioners alone have the right to determine in which of two species of property the proceeds of the bonds shall be invested. They have the power to say they shall be invested in both stock and bonds, and no power is given to them to authorize any other persons to determine for them. Under the clause in question the election, whether the investment shall be in both or in either bonds or stock, is given to the commissioners in violation of the manifest intention of the legislature.

In a case heard before me in Oneida county, I think the petition authorized a sum not exceeding $50,000 or some

other sum to be raised. I was constrained to hold that the power to name the sum for which bonds might issue must be fixed by the tax-payers and the power could not be delegated. I therefore held the proceedings to issue bonds illegal and void.

I am unable to perceive any distinction between that case and this. If I was right then, I am right now. But as the decision of this case does not rest on this point, I shall not consider it farther.

The judgment of the county judge is affirmed and the *cer tiorari* quashed, with costs to be paid by the relator.

Judgment affirmed.